George H. Vinette, J.
The plaintiff, Howard Schwartz, the proprietor of a pharmacy located at “Field City ” Shopping-Center in North Syracuse, New York, seeks a permanent injunction against the defendant Fields. The various defendant corporation entities are herein referred to as “Fields” because of the identity of interests and by the stipulation of attorneys. The gravamen of this action is to enjoin Fields from further operating their health and beauty aid department in the manner in which it is now being operated. The plaintiff also seeks monetary damages for diminution of the value of his leasehold, loss of profits and other damage items.
*1046 Fields is a large discount store which had 60,000 square feet of floor space when first built to which 6,000 more square feet have been added. Fields’ health and beauty aid department started with approximately 400 to 600 square feet of floor space, which department was enlarged to 1,400 or 1,500 square feet of floor space about the year 1962.
The lease on Fields’ premises contains no restriction as to the type of products it may sell. The proof in this trial indicated that Fields was not aware of the wording of any restriction in the plaintiff’s lease executed about two months subsequent to the execution of its lease with the developer Bersani. The evidence further indicated that the plaintiff was aware that there were no restrictions as to sale of products in the Fields’ lease.
The major question before this court is the interpretation of the letter written by Fields to the shopping center developer Bersani, dated August 11, 1958, the same date the plaintiff executed his lease. The developer Bersani obtained the letter of August 11, 1958, for the purpose of assuring the plaintiff of the type of operation that Fields would conduct and it was employed to induce the plaintiff to execute his lease on the same date. The contents of the letter were orally transmitted by Fields to the developer Bersani prior to the execution of plaintiff’s lease. The conversation was transmitted to the plaintiff by Bersani on that occasion. A copy of the letter was later delivered to the plaintiff by Bersani. The significance of the letter to the plaintiff is brought out by his testimony that he did nothing relative to the purchase of store equipment or sales merchandise until he was actually in possession of the letter. The body of the letter reads as follows: ‘ ‘ Please be advised that we do not intend to operate a pharmaceutical department requiring a registered pharmacist, and that we will be carrying in the Syracuse store a line similar to what you saw in Natick and Medford insofar as cosmetics, tooth-pastes, etc. are concerned.”
The plaintiff testified in substance that the letter from Fields to the developer Bersani of August 11, 1958, stated accurately the conversation that was relayed to him on the date of the signing of his lease and that he understood that the defendant Fields would have a health and beauty aid department in their store.
In reviewing all of the circumstances surrounding the letter, we find that it is binding on the defendant in this situation. (Restatement, Contracts, § 90, Tentative Draft No. 2, dated April 30,1965.)
*1047 The testimony makes it clear that the product lines carried in the Syracuse store by Fields from 1958 through 1961 were similar to those carried in the Fields stores in Natick and Med-ford. In 1962, the floor space in Fields’ health and beauty aid department was increased. A small number of new items were introduced, whether they were of the beauty or drug type of items, the record is completely devoid of proof. The proof shows that more shelf and counter space was added and the number of brands increased. Whether or not the additional items were similar, pursuant to the meaning of (‘ similar ’ ’ in the letter of August 11, 1958, is relevant to this case.
“Similar” has been defined in Black’s Law Dictionary, Fourth Edition, as ‘ nearly corresponding; resembling in many respects; somewhat like; having a general likeness.”
The court finds Fields carried a £ 1 similar ’ ’ line within the meaning of the letter of August 11, 1958, hereinbefore referred to.
The enlargement of the department in question began in 1962 when Fields changed their health and beauty aid department from one supplied by a so-called “ rack jobber” to one supplied by their own buying office. The testimony of the plaintiff’s witness, Anthony Bersani, clearly indicated that at the date of the lease execution the plaintiff was simply interested in not having another regular drugstore in the shopping center. This is further confirmed by the “ seventeenth ” paragraph in the plaintiff’s lease with the developer Bersani, in which it is stated:
“Lessee shall have the exclusive right to operate a retail drug business, including the sale of trusses and hearing aids within the grouping of buildings shown on the attached map. Nor shall there be erected at any time during the term of this lease, by the lessor, any additional units which shall be used for such drug retailing as described, within 1,000' of the subject 1 ocation.
“ However, this stipulation shall not exclude the known type of drug specialty rack as operated by Grand Union nor does it exclude the operation by J. M. Fields store of a soda fountain in conjunction with their lunch counter.”
The plaintiff seeks to show a breach of the terms of the letter of August 11, 1958, by showing violations on the part of Fields of the State Education Department letter issued January 1, 1961. This letter of the State Education Department was issued nearly two and one-half years after the restrictive letter of August 11, 1958. This letter or release by the State Education *1048 Department stated in substance that any proprietary remedy containing one or more of the ingredients listed therein could be sold only in a registered pharmacy under the supervision of a duly licensed pharamacist. It is the proof of the plaintiff that about two dozen items have been at one time or another sold by Fields in their Syracuse store in alleged violation of the State Education letter of January 1, 1961.
It was the uncontradicted proof that all of the items in the Fields’ health and beauty aid department were packaged, bottled or contained in sealed containers or bottles and were designated by a trade or patented name and that these names were owned by manufacturers or distributors and the products were advertised in various media; that such products were known to the public as such and that in each instance the product was plainly labeled under the patent or proprietary name and the dosage or use of the item or article was plainly printed on the cover of the sealed article and printed in ordinary lay language. There is no question that proprietary or patent remedies may be sold other than in drugstores. (Education Law, § 6816, subd. 2, par. c; Loblaw, Inc. v. New York State Bd. of Pharmacy, 11 N Y 2d 102.)
The court here finds that the operation of Fields was not that “of a drug store ’ ’ as understood by the plaintiff and the defendants at the time of the execution of the lease of August 11, 1958.
The burden was on the plaintiff to show that Fields was merchandising a line that was not “ similar” to that carried by Fields in their Natick and Medford Stores, or that Fields was operating a pharmaceutical department at the Syracuse store requiring a registered pharmacist. The plaintiff has failed to do either.
Actions 2 and 3 were appropriately disposed of at the end of submission of proof.